[No. 27442. Department One. November 3, 1939.]

THE STATE OF WASHINGTON, *on the Relation of The Model Water & Light Company, Appellant,* v. THE DEPARTMENT OF PUBLIC SERVICE *et al.,* *Respondents.*[1]

*Ed. Peirce,* for appellant.

*The Attorney General, Don Cary Smith, Assistant,* and *Fred J. Lordan,* for respondents Department of Public Service *et al.*

*Post, Russell, Davis & Paine,* for respondent Washington Water Power Company.

ROBINSON, J.—Appellant purchased electrical energy from The Washington Water Power Company, hereinafter referred to as respondent, for operation of its pumping plant. Conceiving that it was overcharged for current consumed during the irrigation season of 1938, it filed a complaint with the department of public service seeking to recover the amount of the alleged

[1] Reported in 95 P. (2d) 392.

overcharge. The department found that there was no overcharge, and appellant appeals from a judgment of the Thurston county superior court affirming the findings of the department.

The facts are not in dispute. The schedule of rates filed by respondent with the department of public service (schedule 46) specifies the following rates for electrical energy for irrigation and domestic pumping:

First 40 K.W.H. per K.V.A. of demand per month, 5¢ net or 5.5¢ gross per K.W.H.

Next 60 K.W.H. per K.V.A. of demand per month, 3¢ net or 3.3¢ gross per K.W.H.

Next 100 K.W.H. per K.V.A. of demand per month, 1¢ net or 1.1¢ gross per K.W.H.

All over 200 K.W.H. per K.V.A. of demand per month, 0.75¢ net or 0.825¢ gross per K.W.H.

The schedule then provides for quantity discounts, based on the net monthly bills, as follows:

| | |
|---|---|
| First $200 | Net $200 |
| Next $100, 20% Discount | Net 80 |
| Next $100, 30% Discount | Net 70 |
| All over $400, 40% Discount | |

The schedule then provides for a minimum net payment as follows:

"The minimum net payment after discounts have been applied shall be $2.00 net or $2.20 gross per K.V.A. of the irrigation season's demand. The minimum irrigation season hereunder shall be any four months between March 20 and October 20."

The schedule provides a method for determining the demand and provides that, in lieu of this method, at the customer's request made before the beginning of the season, the billing demand will be determined by monthly demand meter readings.

Appellant's irrigation season commenced May 24, 1938. It is admitted that appellant requested that the

season commence on that date, and that is the date connection was made with appellant's pumping plant and appellant commenced using the electricity for pumping purposes. The minimum season of four months, therefore, extended to September 24, 1938.

Appellant shut down its pumping plant on August 30, 1938. Its president, Mr. Pierce, testified that they shut down because they were of the opinion that the minimum season ended on this date. It seems that they did not desire to consume current under this schedule beyond the end of the minimum period.

The practice of respondent was to read the meters on the first day of each and every month. When an irrigation season commenced on a date intermediate the first and last day of a month, the meters were read on the day the season commenced, and again on the first day of the following month; and the customer was billed for the electrical energy used during that period. The amount of the bill for the fractional part of the month was computed in the following manner: If there were ten days' use in a thirty day month, the kilowatt hours were multiplied by three, the bill was then computed on the rate and the quantity discounts applied, and the result divided by three. The bills rendered by respondent to appellant show the following kilowatt hours of electric current consumed, the demand, and the net charges:

|  | K.W.H. | K.V.A. | Net Charge |
|---|---|---|---|
| May 24 to June 1: | 23,231 | 136 | $193.04 |
| June 1 to July 1 | 29,143 | 137 | 512.40 |
| July 1 to Aug. 1 | 91,568 | 144 | 807.18 |
| Aug. 1 to Sept. 1 | 88,899 | 141 | 789.22 |
| Sept. 1 to Sept. 24 | 0 | 140 | 214.67 |

The meters showing no demand during the last twenty-three days of the four months' minimum season, the demand was determined by taking the aver-

age of the demands for the previous months—140—the lowest was 136 and the highest 144—and respondent was billed for the minimum net payment for the remaining twenty-three days of the minimum season determined by multiplying 23/30ths of the demand by $2.00.

Appellant contends that this method of computing the charges was erroneous and not authorized by the schedule, and resulted in an overcharge. The overcharge is stated in its complaint to have been $190.60, and, in its brief, $214.67, which is the net amount of the September bill.

█ Appellant argues that, as it used the current for a part of the fourth month of the minimum season and the amount of current so used exceeded the minimum requirement, it was not proper for respondent to bill it for any minimum net payment. Appellant fails, however, to take into consideration the fact that, by respondent's method of computation, the charges for the current consumed in May were much less than they would have been had the amount of the current consumed during the last seven days of May been treated as the amount of current consumed during an entire month. In other words, had the 23,231 kilowatt hours of current consumed during the last seven days of May been treated as the amount of current consumed during the first month or the last month of the four months' minimum season, the amount of the net bill would have been, as we compute it, $477.86, which is considerably more than the amount of the May bill, $193.04, plus the amount of the minimum payment for September, $214.67.

It is quite clear from the evidence that appellant has not been overcharged. The department found that respondent was within its rights in reading the meters at the beginning of the season on May 24th,

and again on June 1st, and then prorating the billing for the last seven days of May on the basis of a thirty day month, in order to facilitate the mechanical operation of its bookkeeping and billing departments, and we agree with this finding.

The judgment appealed from is affirmed.

BLAKE, C. J., MAIN, STEINERT, and JEFFERS, JJ., concur.